IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09 C 4215 |
| | ) |
| OFFICER OCHOA # 8819, | ) |
| OFFICER PIETRUSIEWICZ # 16186, | ) |
| and CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Giselle Wallace has sued Chicago police officers Oswaldo Ochoa and Theresa Pietrusiewicz and the City of Chicago. Wallace asserts claims against Ochoa and Pietrusiewicz under 42 U.S.C. § 1983 for violation of her Fourth Amendment rights and for false imprisonment under state law, as well as a claim against the City for indemnification of the officers under 745 ILCS 10/9-102. The defendants have moved for summary judgment. For the reasons stated below, the Court grants the motion in part and denies it in part.

### Facts

Because the defendants have moved for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway Super-America, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Wallace is an African-American woman who was born on June 23, 1971. According to her Illinois driver's license, she is 5'4" tall and weighs between 145 and 150 pounds. She also has a tattoo on her left breast, a fact whose relevance will become apparent in a moment.

On the morning of July 3, 2009, Wallace was driving from her workplace to her home, westbound on Chicago Avenue, to have lunch. She was stopped by Ochoa, who was alone in a Chicago police squad car driving behind her. During his deposition, Ochoa testified that he saw Wallace's left shoulder and did not see her wearing a safety belt. Wallace has stated in an affidavit that she was wearing her seat belt in a proper manner at the time and that it was not tucked under either of her arms. It is undisputed that she had committed no other violations of the law. Ochoa activated the lights and siren on his squad car and caused Wallace to pull over to the curb.

Before getting out of his squad car, Ochoa typed Wallace's license plate number into a computer located in the squad car. The computer revealed the existence of a warrant from St. Louis, Missouri for a forgery offense.[1] The report stated that the subject of the warrant was Jennifer Lynn Wallace, a white female with a birth date of June 23, 1971, 5'6" tall, 190 pounds, with black hair and hazel eyes, and a Social Security number of xxx-xx-6960, as well as a St. Louis address and a Missouri driver's license with the number Jxxxxx9009. The report also stated that the subject had a tattoo on her left breast.

---

[1] In her response to Ochoa's Local Rule 56.1 statement, Wallace admits "only that this is what Officer Ochoa has testified to" but provides nothing suggesting the existence of a factual dispute on these points. The same is true on various other points cited in this decision.

Ochoa then approached Wallace's car and asked for her driver's license, vehicle registration, and proof of insurance, all of which she provided. Her Illinois driver's license, the number of which was Wxxxxxxx1778 (some digits omitted), listed her name as Giselle T. Wallace and said her eyes are brown, her height is 5'4", her weight is 141 pounds, her date of birth is June 23, 1971, and her residence is in Chicago. Ochoa has testified that from looking at Wallace, he believed her to have hazel-colored eyes; Wallace states that she has brown eyes and was not wearing tinted contact lenses. Ochoa also observed that Wallace had tattoos on her neck and in the area of her left breast; it is undisputed that she has such tattoos.

Ochoa has testified that he told Wallace he had stopped her because he did not observe her wearing her seat belt and that she responded by lifting her left arm and showing that the belt's shoulder strap was tucked under that arm – which would have been an improper way to wear the belt. Wallace states in her affidavit that she did not do what Ochoa claims but rather simply stretched out her arms to show that she was wearing her seat belt properly – which is what she states she was doing.

Ochoa returned to his squad car and ran Wallace's driver's license information through his computer. The same warrant information appeared that Ochoa had seen after running Wallace's license plate. Ochoa then returned to Wallace's car; there is a dispute about what he asked at that point. Wallace asked Ochoa what the problem was, and he relied that there was "something popping up on [her] license."

At some point, Officer Pietrusiewicz arrived on the scene. She got into Ochoa's squad car and saw the same report he had seen on his computer. Ochoa told Pietrusiewicz that Wallace had "popped a warrant."

Pietrusiewicz approached Wallace's car and asked her for her Social Security number, which she provided. (She also contends that Ochoa had earlier asked her for her Social Security number and he had given it to him as well.) The number she provided was xxx-xx-2905. Pietrusiewicz observed Wallace to be a woman with black hair and hazel eyes and with tattoos on her neck and the left side of her chest. Pietrusiewicz and Ochoa both say they observed Wallace to have light skin, but Wallace denies this. Ochoa's arrest report, prepared later, lists Wallace's race as black.

Pietrusiewicz returned to Ochoa's squad car and ran Wallace's name, birth date, Social Security number, license plate number, and driver's license number on Ochoa's computer. The warrant from Missouri again popped up. Several minutes later, Ochoa and Pietrusiewicz returned to Wallace's car and asked her to get out. She asked why, and Ochoa said, "You have a warrant." Wallace got out of her car. Ochoa told her (either there or later in his squad car or both) that he needed to access a computer at the police station. Wallace was handcuffed and taken into custody. Pietrusiewicz moved Wallace's car to a nearby legal parking space. The officers did nothing further at the scene to inquire into the discrepancies between Wallace's information and the information on the report regarding the Missouri warrant.

Wallace was taken to the 15th District police station. Once there, she was taken to a processing area. Pietrusiewicz asked Wallace if she was biracial and what her eye color was. Wallace says she did not answer the question about her eye color\; she says she answered Pietrusiewicz's other question but does not say what she told Pietrusiewicz. At some point, Wallace says, she saw a copy of the warrant information,

4

looked at it, and told Pietrusiewicz she had never been to Missouri, had never been 5'7" tall, and had never weighed 190 pounds. No officer asked Wallace about the other discrepancies between the warrant information and her actual information.

Ochoa contacted the Illinois Law Enforcement Agencies Data System (LEADS) and provided LEADS personnel with the Missouri warrant number and Wallace's name. Ochoa has testified that LEADS personnel issued a "hold" – which arguably means only that the warrant was still active – and told Ochoa that Wallace's fingerprints should be obtained to verify if she was the person named in the warrant. Ochoa has also testified that he obtained a criminal history report regarding Wallace, which showed her as using several aliases and different birth dates in the past. (Wallace says she has no facts permitting her to admit or deny these statements, but she identifies no basis for a determination that Ochoa's testimony is genuinely disputed.)

Wallace was later transferred to the 25th District police station because the 15th District station had no lockup for women. She had no contact with Ochoa or Pietrusiewicz after leaving the 15th District station. Once at the 25th District, other officers obtained her fingerprints. These revealed that she was not the person named in the Missouri warrant. Wallace was then returned to the 15th District, where she was arrested without being charged. She was in custody a total of about eight hours.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1.  **Fourth Amendment claims**

Wallace challenges both the initial stop of her vehicle and her later seizure pursuant to the Missouri warrant. The propriety of the stop depends on whether Ochoa had reasonable suspicion that he had committed a traffic infraction. There is a genuine factual dispute on this point. Ochoa has testified that he observed Wallace and could not see her wearing a seat belt. Wallace has testified that she was wearing her seat belt in the proper manner. And there is evidence from which a fact finder could determine that Ochoa was behind her and could not see one way or the other whether she was wearing a seat belt. This dispute can be resolved only via a trial.

The defendants are, however, entitled to summary judgment regarding the propriety of their seizure of Wallace pursuant to the Missouri warrant. It is undisputed that Wallace was not, in fact, the person named in the warrant. The defendants argue that they reasonably believed that Wallace was the person named in the warrant, which if so would justify the seizure. *See, e.g., Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009). Wallace argues otherwise based on the discrepancies between the warrant and her appearance and information, as well as the defendants' failure to inquire further regarding these discrepancies after seeing them.

"The arrest of a person named in a valid warrant . . . even if it turns out to be the wrong individual, will not violate the Fourth Amendment unless the arresting officer acted unreasonably." *White v. Olig*, 56 F.3d 817, 819 (7th Cir. 1995). When an

6

individual shares the same name as a person named in a warrant, discrepancies between the warrant and the individual's physical appearance, address, and birth date are, generally speaking, insufficient to create a genuine factual dispute about whether arresting officers had probable cause. See Tibbs v. City of Chicago, 469 F.3d 661, 664 (7th Cir. 2006) (citations omitted).

In this case, in contrast to Tibbs and some others, Wallace shared only last name of the person named in the warrant, not her first name. The difference in first names is not, by itself, critical. As the Seventh Circuit noted in Tibbs, in Hill v. California, 401 U.S. 797 (1971), the Supreme Court upheld the arrest of a man who produced identification showing he had a name completely different from that of the actual suspect, based largely on the fact that the man was found alone in the suspect's apartment and matched his physical description. See id. at 799-800, 802-03. As the Court noted in Hill, "aliases and false identifications are not uncommon." Id. at 803.

"[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ." Id. at 804. In this case, Wallace had the same last name as the person named in the warrant; she had the same birth date; she had a tattoo in the same place as the person identified in the warrant; and she was the same gender. Despite the near ubiquitousness of tattoos these days, it is hard to dispute legitimately that a visible tattoo on a woman's left breast is a distinguishing factor. In addition, on the record before the Court it is undisputed that when the officers input Wallace's license plate (a vanity plate with a relatively distinctive name), driver's license number, and Social Security number into their computer, the same Missouri warrant kept

7

popping up. The fact that Wallace was not actually the person named in the warrant suggests rather strongly that there was an error in the inputting of data, but that was the mistake of someone other than the arresting officers. *Cf. Johnson v. Miller*, 680 F.3d 39, 41 (7th Cir. 1982) ("Those responsible for the discrepancy may be liable, but they are not defendants in this case." (citations omitted)).

The Court acknowledges, as Wallace points out, that there is no Seventh Circuit case "on all fours" with this one. Despite this, the Court concludes, based on the cases and principles discussed above, that no reasonable jury could find that the defendants lacked a reasonable belief that Wallace was the person named in the Missouri warrant. The defendants are therefore entitled to summary judgment on the part of her Fourth Amendment claim (count 1) that challenges her seizure pursuant to the warrant. And because Wallace's false imprisonment claim (count 2) is similarly premised on an allegation of the absence of probable cause, the defendants are likewise entitled to summary judgment on that claim.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment in part. Summary judgment is granted in favor of defendants on the portion of count 1 alleging unlawful seizure pursuant to the Missouri warrant and on count 2. Defendants' motion is otherwise denied. The case remains set for a status hearing on June 10, 2010 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
Date: June 9, 2010    United States District Judge